

FILED

FEB 13 2012

PATRICK E. DUFFY, CLERK
By_____
DEPUTY CLERK, MISSOULA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

| | | |
|---|---|---|
| MONTANA FAIR HOUSING, INC., | ) | CV 09-90-BU-DLC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| CITY OF BOZEMAN, ANDY EPPLE, | ) | |
| VICKI HASLER, and the HINESLEY | ) | |
| FAMILY LIMITED PARTNERSHIP #1, | ) | |
| HINESLEY DEVELOPMENT and | ) | |
| CHARLES W. HINESLEY, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Montana Fair Housing, Inc., ("Fair Housing") is a nonprofit

corporation dedicated to promoting equal opportunity and eliminating illegal

discrimination in the sale and rental markets for housing. Defendants City of

Bozeman, Andy Epple, and Vicki Hasler (collectively, "the Bozeman

Defendants") are a political subdivision of the State of Montana and two of its

-1-

planning and code enforcement officers.  Defendants Hinesley Family Limited

Partnership #1, Hinesley Development and Charles W. Hinesley (collectively, "the

Hinesleys") are developers of real property in the Bozeman area.

The claims in this action arise in two overlapping contexts.  The first is the

construction by the Hinesleys of Aiden Condos I and II in Bozeman, and the

Bozeman Defendants' issuance of building permits and, ultimately, certificates of

occupancy for Aiden Condos I and II (the "Hinesley claim").  The second is the

Bozeman Defendants' enactment and enforcement of a municipal zoning

ordinance (the "Ordinance claim").  Fair Housing's Complaint in this case states

eleven counts: two against the Hinesleys (Counts I and II) and nine against the

Bozeman Defendants (Counts III through XI).  The counts against the Hinesleys

have been resolved by a Consent Order and Judgment against the Hinesleys and in

favor of Fair Housing, including injunctive relief and payments by the Hinesleys

to Fair Housing totaling $58,036.92.

Remaining pending are the nine counts against the Bozeman Defendants,

covering both the Hinesley claim and the Ordinance claim.  Fair Housing alleges

violations of the Fair Housing Act, the Americans with Disabilities Act, the

Rehabilitation Act, the Due Process and Equal Protection Clauses of the

Fourteenth Amendment to the United States Constitution, the Montana Human

-2-

Rights Act, the Montana Government Code of Fair Practices, Montana state building codes, and Article II, Sections 9 and 10 of the Montana Constitution. Fair Housing seeks declaratory and injunctive relief and money damages.

The Bozeman Defendants filed a motion for summary judgment in which they argue that Fair Housing lacks standing to pursue counts III through X, and that Fair Housing's claims are moot in light of the Consent Order and Judgment against the Hinesleys. Fair Housing opposes the motion, arguing that it has organizational standing[1] to pursue affirmative relief and money damages in relation to both the Hinesley claim and the Ordinance claim, and that its claims are not moot.

United States Magistrate Judge Carolyn S. Ostby issued Findings and Recommendations in which she concluded that the Bozeman Defendants' motion for summary judgment should be denied. Judge Ostby began by setting forth the three elements of standing: (1) injury in fact; (2) causation; and (3) redressability. Findings and Recommendations (Doc. No. 129) at 30. Judge Ostby explained that for a plaintiff asserting organizational standing, the injury element requires a showing that the plaintiff suffered both a diversion of its resources and a frustration of its mission. Doc. No. 129 at 31-32 (citing La Asociacion de

---

[1]Fair Housing has no members and does not assert representational standing.

Trabajadores de Lake Forest v. City of Lake Forest, 624 F.3d 1083, 1088 (9th Cir.

2010)).  She also noted that a plaintiff must make a separate showing of standing

for each form of relief sought.  Doc. No. 129 at 32 (citing Friends of the Earth,

Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 185 (2000)).

Applying those principles, Judge Ostby concluded that Fair Housing has presented

evidence of diversion of its resources and frustration of its mission with regard to

both the Hinesley claim and the Ordinance claim, and that those claims are not

moot because there are genuine issues of fact as to whether the damages awarded

in the Consent Order and Judgment are sufficient to cover Fair Housing's present

and future damages.

In considering Fair Housing's standing to seek declaratory and injunctive

relief, Judge Ostby noted the additional requirement that Fair Housing present

evidence of a very significant possibility of future harm.  Doc. No. 129 at 40

(citing San Diego County Gun Rights Committee v. Reno, 98 F.3d 1121, 1126

(9th Cir. 1996)).  She concluded Fair Housing has established standing because it

has presented evidence that is has diverted and will continue to divert resources to

monitoring the Bozeman Defendants' practices and counseling seekers of housing;

evidence that the Bozeman Defendants have enforced and will continue to enforce

Bozeman's municipal housing ordinances; and evidence that the Bozeman

-4-

Defendants continue to follow inspection and approval practices that fail to comply with anti-discrimination laws. Based on her finding that Fair Housing has established standing and its claims are not moot, Judge Ostby recommends denial of the Bozeman Defendants' motion for summary judgment.

The Bozeman Defendants timely objected to Judge Ostby's Findings and Recommendations, thereby preserving their right to de novo review of the record. 28 U.S.C. § 636(b)(1).

The Bozeman Defendants first object to what they characterize as a factual finding by Judge Ostby that Fair Housing pursued its concerns over the Ordinance in January of 2004. The Bozeman Defendants contend that Fair Housing did not pursue its concerns until October 1, 2009, a distinction they claim is significant because Fair Housing has not alleged a specific instance of discrimination in the application of the Ordinance, making it "impossible to determine if the applicable statute of limitations bars its claims." Objections (Doc. No. 130) at 4.

The objection is unpersuasive for several reasons. To begin, Judge Ostby's Findings and Recommendations do not contain a determination that Fair Housing pursued its concern in 2004. She found that Fair Housing and the Bozeman Defendants "communicated" in 2003 or 2004, and that Fair Housing "[u]ltimately" filed a Complaint with the Montana Human Rights Bureau. Findings and

-5-

Recommendations (Doc. No. 129) at 10-11. As support for these findings she cited the Bozeman Defendants' own Statement of Undisputed Facts. Id. Moreover, the timing of Fair Housing's Complaint with the Montana Human Rights Bureau is insignificant in light of Judge Ostby's legal determination—unchallenged by the Bozeman Defendants—that the standing doctrine does not require Fair Housing to first alert the Bozeman Defendants of its concerns before initiating litigation. Doc. No. 129 at 36-37. The attempt by the Bozeman Defendants to tie Judge Ostby's alleged factual finding to the statute of limitations also fails. The Bozeman Defendants seek summary judgment on the grounds of standing, ripeness, and mootness; their briefs make no mention of the statute of limitations, and this Court's review of the Findings and Recommendations is confined to the scope of the issues raised before Judge Ostby.

The Bozeman Defendants next argue that Judge Ostby erred in determining that Fair Housing has satisfied the causation element of standing with regard to the Hinesley claim. In the standing context, causation requires a showing that the injury alleged is "fairly traceable" to the defendant's challenged conduct. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). The Bozeman Defendants argue that the facts relied upon by Fair Housing to support standing do not demonstrate

-6-

that Fair Housing's injury is fairly traceable to the actions of the Bozeman

Defendants.  They argue that the alleged diversion of staff time and resources for

site visits did not result from their conduct because the investigation and site visits

occurred before Bozeman had issued a certificate of occupancy for Aiden Condos

I and II.  If Fair Housing had only notified the city of its concerns before the

certificates were issued, the Bozeman Defendants argue, Fair Housing would not

have suffered the damages it now claims.  The Bozeman Defendants also contend

that the Fair Housing-sponsored conference addressing the disputed design and

construction issues was intended to educate contractors, not cities, and therefore

the alleged diversion of staff time and resources cannot be traced to the Bozeman

Defendants' conduct.

The challenge to the causation element of standing is unpersuasive.  To

begin, the Bozeman Defendants misstate the factual allegations when they argue

that Fair Housing's expenditure of staff time and resources was limited to an

investigation of the Hinesley property.  Judge Ostby explicitly noted that Fair

Housing has presented evidence that it devoted time and resources to investigate

"*other* properties' design and construction defects" as well.  Doc. No. 129 at 34

(emphasis added).  Her finding is supported by the Declaration of Fair Housing's

executive director, which states she conducted investigation of multi-family

-7-

dwellings other than the Hinesley property. Doc. No. 117-1 at ¶¶ 2-3. The
Bozeman Defendants to do not challenge Judge Ostby's characterization of the
evidence; to the contrary, their objection assumes that "the fact identified by the
Magistrate Judge ... are true[.]" Objections (Doc. No. 130) at 7. These facts show
that Fair Housing's expenditure of resources extends to more properties in
Bozeman than just the Hinesley properties.

Moreover, it is irrelevant whether Fair Housing contacted the Bozeman
Defendants before the issuance of certificates of occupancy. The Bozeman
Defendants agree with Judge Ostby's legal conclusion that Fair Housing has no
duty to notify the Bozeman Defendants of its intent to sue, Doc. No. 130 at 8, but
nonetheless contend that Fair Housing's damages are not traceable to the Bozeman
Defendants because the damages "are the direct result of [Fair Housing's] own
inaction in the face of an ability to prevent those damages by simply notifying
Bozeman of the violations." Doc. No. 130 at 9. The Bozeman Defendants'
Objections, like their underlying briefing, lack any legal authority for the
argument that standing requires Fair Housing to have mitigated its damages by
notifying the Bozeman Defendants of its concerns prior to the issuance of
certificates of occupancy. The facts in the record are sufficient to satisfy the
causation element of standing.

Finally, the Bozeman Defendants object to Judge Ostby's finding that Fair

Housing has presented evidence showing that it suffered a diversion of its

resources and a frustration of its mission in relation to the Ordinance claim.

Specifically, the Bozeman Defendants appear to dispute whether Fair Housing has

presented evidence sufficient to establish that it has expended time and resources

to counteract a loss of equal housing resulting from Bozeman's zoning and land

use practices.

As to Fair Housing's mission, the Bozeman Defendants argue that Fair

Housing has not produced evidence to support Judge Ostby's finding that its

mission includes "the promotion of equal housing opportunities and elimination of

discriminatory housing practices – including exclusionary zoning practices." Doc.

No. 129 at 33.  Judge Ostby's Finding is supported by the Declaration of Fair

Housing's executive director, Pam Bean.  Doc. No. 97-3.  The Bean Declaration

contains a general statement of Fair Housing's mission and a detailed list of the

types of activities Fair Housing engages in to carry out that mission, including

supplying information on fair housing issues to housing providers and government

officials via brochures, pamphlets, newsletters, letters, and workshops sponsored

by Fair Housing, including 12 workshops in Bozeman since 2008.  Doc. No. 97-3

at 2.  According to the Bozeman Defendants, this evidence is insufficient because

it "represents a bald conclusion, not fact." Doc. No. 130 at 9. The argument lacks merit. The Declaration of Fair Housing's executive director is sufficient evidence of the mission of the organization to establish organizational standing. In fact, in their own Statement of Undisputed Facts, the Bozeman Defendants state that "[Fair Housing's] goal is to promote equal opportunity in the sale, rental, and availability of housing." Doc. No. 103 at 2.

The Bozeman Defendants argue that even if Fair Housing has presented evidence sufficient to establish its mission, it has not demonstrated organizational standing because there is no evidence of a loss of equal housing and no evidence of actions by Fair Housing to address such a loss. The record contradicts the Bozeman Defendants' objection. Fair Housing has presented sufficient evidence of diminished housing opportunities for disabled, elderly, and unmarried individuals. Fair Housing's Statement of Undisputed Facts (Doc. No. 117) at ¶¶ 8, 16, 18, 19, 28 (and supporting exhibits). Fair Housing has also placed in the record sufficient evidence of its efforts to counteract what it alleges are the discriminatory effects of Bozeman's zoning and land use policies. Doc. No. 117 at ¶¶ 2, 8.c, 9.a.-d., 10.a.-c., 11, 12.a., 12.c., 14, 15.a.-b., 20.a.-d., 22.d.i.-xiii., and 23.d. (and supporting exhibits). In particular, the activities catalogued at Paragraph 22.d.i.-xiii. of Document 117 constitute ample evidence of Fair

Housing's expenditure of time and resources to address the alleged ongoing
deprivation of equal access to housing.  In light of this evidence, the Bozeman
Defendants' objection fails.

Having considered all of the Bozeman Defendants' objections, and upon de
novo review, I agree with Judge Ostby's Findings and Recommendations (Doc.
No. 129) and therefore adopt them in full.

Accordingly, IT IS HEREBY ORDERED that the Bozeman Defendants'
motion for summary judgment (Doc. No. 101) is DENIED.

Dated this 13th day of February, 2012.

Dana L. Christensen, District Judge
United States District Court

-11-